[ PHILADELPHIA, JANUARY 4, 1840. ]

## GREEN *against* ROBERTS and Others.

Where an agreement under seal stipulates for the construction by the plaintiff of a steam engine for the defendants within a certain time, " unavoidable accidents only excepted," and the defendants covenant to pay for the same by instalments at certain periods after the commencement and completion of the work; and an unavoidable accident happens by which the completion of the work is delayed; and the time for performance is enlarged by parol; the plaintiff must proceed in *covenant* and cannot maintain an action of *assumpsit*, although the accident should happen after the time for performance has expired.

THIS was an action on the case brought by Jacob Green against Israel Roberts, Richard Jordan and Archibald Robertson.

The plaintiff declared in assumpsit for work and labour, and the other money counts and on an account stated, &c. The defendants pleaded non assumpsit and payment, &c.

On the trial before ROGERS, J., at a Court of Nisi Prius held in Philadelphia, on the 28th of November, 1839, the plaintiff's counsel stated that the action was brought to recover the price or value of a certain steam engine and machinery, made by the plaintiff for the defendants in pursuance of a certain agreement between them, which was given in evidence as follows:

" Articles of agreement made and concluded the twenty-first day

(Green v. Roberts.)

of December, Anno Domini one thousand eight hundred and thirty-five, between Jacob Green, steam engineer and iron founder, Joseph Oat, coppersmith, and Robert Barrett, bricklayer, all of the county of Philadelphia, of the one part, and Israel Roberts, Richard Jordan and Archibald Robertson, of the city of Philadelphia, trustees of the Canal Steam Transportation Company, of the other part, witnesseth: that for and in consideration of the sum hereinafter expressed, the said Jacob Green doth promise, covenant and agree to and with the said trustees, to make, furnish and erect, two complete and perfect high pressure steam engines, on the most improved and approved plan, with two locomotive iron boilers of thirty-six inches diameter each, containing seventy-eight copper tubes of two inches diameter and six feet long each, to be made on the same or on an improved plan as the one lately made by Messrs. Long and Norris, at Bush-hill, for Messrs. Garrett and Eastwick, in Wagner's alley, (unless the parties to this agreement should mutually agree to differ their construction, in consequence of their being considered too large or too small:) the arrangement of engines and boilers, &c. &c., to be directed by the patentee and superintendent of the work. The engines to be of the following dimensions and descriptions, that is to say—there shall be two cylinders of twelve inches in diameter of bore each, and four feet stroke each, both to work on the same shaft, at right angles, and to work from the bottom of the boat, at an angle of about forty degrees; the gudgeon beds, valves, valve seats, and all other parts, where necessary, to be of brass; she must have two governors, one for each engine; two forcing pumps, one of which to work with the machinery, the other to work by hand; two bilge pumps, one to work with the machinery, the other to work by hand; all the leading and supply pipes, inlets and outlets of every sort and description appertaining to the engines and boilers, all the tools necessary to use about the engines and boilers, all the framing for the engines and boilers, all wood work, bolts and bracing for the same, as well as for the water wheels: the whole to be of a proper proportion and strength; all arrangements and plans to be decided by, and upon, by the building committee; every thing to be of good materials, of good style, and of substantial workmanship, and to be ready to commence the putting of them on board of a boat (to be provided for the purpose by the said trustees,) in two months and a half from the date of this agreement, and to be completed and put into operation in three months and a half from the day of the date hereof, unavoidable accidents only excepted. And the said Jacob Green doth hereby further promise, covenant and agree to and with the said trustees, to warrant the said engines, boilers and machinery for the space of four months from the day of its being put into operation; and in case of failure in any of its parts, in consequence of a defect in materials or workmanship, to repair the same, during the time aforesaid, free of any charge to the said

trustees. In consideration whereof, the said trustees of the aforesaid company, do hereby covenant, promise·and agree, to, and with the said Jacob Green, to pay him the just and full sum of· six thousand and fifty dollars, (two hundred and fifty dollars of said sum is to be paid by said Jacob Green, taking that amount of the capital stock of said company, at par,) in manner following, to wit; one equal fourth part of fourteen hundred and fifty dollars, in thirty days from the commencement of the work; one other equal fourth part of like amount, in sixty days from the commencement of the work; one other equal fourth part of like amount, in ninety days from the commencement of the work; and the remaining equal fourth part of like amount, in a negotiable note at four months from the time the engine, machinery, &c., &c., &c., goes into operation; the instalments on the capital stock aforesaid to be deducted from the payments, should any instalments be due thereon. And for the true and faithful performance and fulfilment of all and every, the covenants and promises of this agreement, the said parties do bind themselves, each unto the others, in the penal sum of fifteen hundred dollars.

In witness whereof, the said parties have hereunto set their hands and seals, the day and year first above written."

The instrument was sealed by the several parties.

The plaintiff then proved that immediately after the agreement was executed, he began making the engines, &c., and continued to work at them till the summer or autumn of 1836, when they were delivered; that during the progress of the work, the plaintiff made frequent demands for payment of money according to the terms of the agreement; and he proved the service of the following order on the treasurer of the defendants, and a demand for the money therein mentioned, which demand was not then complied with.

"March 11th, 1836.

Mr. Potts, of the firm of Potts & Cooper.

Sir: You will please pay the bearer Charles D. Colladay, the balance of the second payment, which was due February the twenty-first eighteen hundred and thirty-six, which is one thousand two hundred and twenty-two dollars and fifty cents, and oblige,

Yours, respectfully,

$1222 50                    Jacob Green.

Mr. Potts, treasurer of the Canal Steam
    Transportation Company."

The plaintiff then called on the defendants to produce their receipt book; which being done, the plaintiff read receipts therein, given by him for moneys paid at various dates from the 22d of January, to the 16th of September, 1836.

It was proved that much delay was caused in the making the

(Green *v.* Roberts.)

engines and performance of the work; in part, by the fact of a flaw having been discovered in one of the boilers, which obliged the plaintiff to re-cast it, and in part, by the interruptions to the work, caused by one Captain Crocker, under whose superintendence as agent of the defendants, the work was done, and engines put up, &c., on board the boat. The plaintiff claimed six thousand and fifty dollars, deducting the payments made, and closed; whereupon the Court ordered a nonsuit to be entered, with leave to move to take it off, deciding that *covenant,* and not *assumpsit,* was the only action which could be sustained by the plaintiff.

The case now came before the Court on a motion to take off the nonsuit.

Mr. *Fallon,* and Mr. *St. G. Campbell,* for the plaintiff, cited *Jordan v. Cooper,* (3 *Serg. & R.* 564.) *Vickery* v. *Moore,* (2 *Watts,* 456.) *Shaw* v. *Turnpike Co.,* (2 *Penn. Rep.* 461.) *Little* v. *Holland,* (3 *Term Rep.* 590.) *Brown v. Goodman,* (cited *Id.* 592, in note.) *Philips* v. *Rose,* (8 *Johns.* 392.) *Freeman* v. *Adams,* (9 *Johns.* 115.) *Jewel v. Schroeppel,* (4 *Cowen,* 564.) 4 *Brown Ch.* 391. 3 *Madd. Rep.* 447. 6 *Madd. Rep.* 36. 1 *Wash. Rep.* 170. 1 *East,* 619. 1 *Maule & Selw.* 575. 3 *Harr. & Johns.* 438.

Mr. *Miles,* for the defendant, cited *Cutter* v. *Powell,* (6 *Term Rep.* 320,) and referred to the note to that case in *Smith's Selection of Leading Cases,* vol. 2, p. 10, where the authorities are collected and reviewed.

The opinion of the Court was delivered by

GIBSON, C. J.—That a stipulation for performance, within a specified period, of a condition precedent to an action at law, must be strictly satisfied, is an elementary principle which is familiar even to the sciolist; and that the acceptance of subsequent performance is taken for an equivalent for it in equity, is equally known. In this instance, however, the stipulation for a time of performance, was not put, without qualification, into the shape of a condition. The plaintiff covenanted that all things should be ready to put the engines and boilers aboard at a day named, and that the work should be finished within a specified period afterwards, "unavoidable accidents only excepted;" it was not finished, however, till four or five months had elapsed beyond the period; but an unavoidable accident was shown to have happened by the discovery of a flaw in one of the boilers, which, if it necessarily occasioned the plaintiff's performance to be incomplete at the end of the time limited for it, dispensed with it as a condition by the very words of the contract, and made the subsequent arrangements consistent with the instrument: consequently he might in that state of the case recover on it without averring his own performance by alleging the accident as an excuse

(Green *v.* Roberts.)

for it. If, however, as has been alleged in the argument, the accident did not happen till the time for performance had expired, and consequently was not the cause of the delay—a matter determinable by the time when the defect in the boiler was discovered—the plaintiff might still recover on the instrument, according to *Jordan* v. *Cooper*, by superadding a count to meet proof of subsequent performance under a parol enlargement of the time of it; and thus he may still proceed securely in an action of covenant adapted to the alternative. This case of *Jordan* v. *Cooper* has been erroneously supposed to be overruled by *Vickery* v. *Moore*, as a glance at the latter will serve to show. Even were the alteration clearly such, in this instance, as to reduce the contract to parol, the equitable remedy on the instrument, which according to *Jordan* v. *Cooper*, the plaintiff may at least elect to have, where strict performance of a precedent condition has been dispensed with, and which he cannot choose but have when he goes for such relief as is granted in the case of payment after the day—would still be the preferable one, because a specialty is of higher degree than a simple contract. There are cases however—and *Vickery* v. *Moore* was one them—in which the alteration has not regard to the performance of a precedent condition out of time, but to the covenants on which breaches are assigned; and such a case admits not of election as to the remedy, for the whole has been turned into parol. Such was not the case here; and we cannot say that the plaintiff was improperly nonsuited.

Motion disallowed.